## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAST COAST AESTHETIC SURGERY NJ, <br><br> Plaintiff, <br><br> -against- <br><br> UNITED HEALTHCARE INSURANCE COMPANY, <br><br> Defendant. | Index No.: <br><br><br> **COMPLAINT** |

Plaintiff, East Coast Aesthetic Surgery NJ ("Plaintiff"), on assignments from Michael G., Margaret L., and Shmuel C., by and through its attorneys, Schwartz Sladkus Reich Greenberg Atlas LLP, by way of Complaint against United Healthcare Insurance Company ("Defendant"), alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a New Jersey medical practice registered to do business in the State of New Jersey.

2. Upon information and belief, Defendant is engaged in administering health care plans or policies in the state of New Jersey.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). The insurance policies at issue are governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The administrative remedies have been exhausted.

**FACTUAL BACKGROUND**

4. Plaintiff is a medical provider who specializes in plastic and reconstructive surgery.

5. On May 1, 2016, Plaintiff performed surgical treatment on Michael G. ("Patient 1"). (*See*, **Exhibit A**, attached hereto.)

6. Specifically, Plaintiff performed reconstruction of Patient 1's right lower eyelid and midface, among other procedures, after he suffered a severe traumatic face injury resulting from a bicycle accident. *Id.*

7. At the time of his treatment, Patient 1 was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

8. Plaintiff does not have a network contract with Defendant that would determine or limit payment for Plaintiff's treatment of Defendant's members.

9. Patient 1 assigned his health insurance rights and benefits to Plaintiff. (*See*, **Exhibit B**, attached hereto.)

10. After treating Patient 1, Plaintiff submitted Health Care Financing Administration ("HCFA") medical bills to Defendant demanding payment for the performed treatment in the total amount of $84,750.00.

11. Patient 1's insurance plan reimburses out-of-network treatment in accordance with usual, reasonable, and customary ("URC") rates. (*See*, **Exhibit C**, attached hereto.)

12. Plaintiff's charges of $84,750.00 were URC for the specific treatment performed on Patient 1.

13. Indeed, Defendant issued reimbursement for Plaintiff's charges in the amount of $84,100.00, covering approximately 99% of Plaintiff's bill. (*See*, **Exhibit D**, attached hereto.)

14. However, Defendant subsequently recouped $31,400.00 having determined that its reimbursement of $84,100.00 was an overpayment.

15. Thus, Defendant's revised covered amount for Plaintiff's treatment of Patient 1 was $52,700.00.

16. Plaintiff, maintaining that its charges in the amount of $84,750.00 were URC, submitted multiple internal appeals to Defendant challenging Defendant's revised covered amount as an underpayment under the terms of Patient 1's insurance plan.

17. However, Defendant refused to overturn its revised determination, leaving an unpaid portion of Plaintiff's charges in the amount of $32,050.00 ($84,750.00 - $52,700.00 = $32,050.00).

18. On October 23, 2018, Plaintiff performed surgical treatment on Margaret L. ("Patient 2") to repair a ruptured silicone breast implant. (*See*, **Exhibit E**, attached hereto.)

19. At the time of her treatment, Patient 2 was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

20. Plaintiff is not in-network with Defendant and Defendant's insurance plan does not ordinarily include coverage for out-of-network treatment. Therefore, prior to treating Patient, Plaintiff obtained an "in-network exception" from Defendant under authorization number 113142281.

21. Pursuant to the in-network exception that was granted, and under Defendant's general policy with respect to in-network exceptions, Patient 2 was entitled to insurance coverage for Plaintiff's treatment under which her liability for Plaintiff's treatment should have been limited to the cost-sharing that would apply had the treatment been performed by an in-network provider.

22. Patient 2 assigned her health insurance rights and benefits to Plaintiff. (*See*, **Exhibit F**, attached hereto.)

23. After treating Patient 2, Plaintiff submitted a HCFA medical bill to Defendant demanding payment for the performed treatment in the total amount of $24,250.00. (*See*, **Exhibit G**, attached hereto.)

24. On or around January 18, 2019, Defendant issued payment for Plaintiff's services in the total amount of $12,500.00. (*See*, **Exhibit H**, attached hereto.)

25. Defendant's explanation of benefits indicated that the remaining $11,750.00 was adjusted even though Plaintiff never agreed to any such adjustment.

26. On or around June 10, 2019, Plaintiff submitted an internal appeal challenging Defendant's reimbursement as an underpayment under the terms of Patient 2's insurance plan. (*See*, **Exhibit I**, attached hereto.)

27. On or around July 26, 2019, Defendant issued an additional $1,971.50 in reimbursement for Plaintiff's treatment of Patient 2, bringing its total payment to $14,471.50 (*See*, **Exhibit J**, attached hereto.)

28. Defendant's revised explanation of benefits indicated that the remaining $9,778.50 in Plaintiff's charges were neither Defendant's nor Patient 2's responsibility even though Plaintiff never agreed to any such arrangement. *Id*.

29. Subsequently, Plaintiff submitted a second and final internal appeal challenging Defendant's reimbursement as inconsistent with the terms of Patient 2's insurance plan and inconsistent with the terms of the in-network exception that was granted prior to Patient 2's treatment.

30. However, Defendant failed to issue any additional payment in response to Plaintiff's final appeal.

31. On February 17, 2019, Plaintiff performed emergency surgical treatment on Shmuel C. ("Patient 3") who suffered a complex laceration of his forehead. (*See*, **Exhibit K**, attached hereto.)

32. At the time of his treatment, Patient 3 was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

33. Patient 3 assigned his applicable health insurance rights and benefits to Plaintiff. (*See*, **Exhibit L**, attached hereto.)

34. After treating Patient 3, Plaintiff submitted a HCFA medical bill to Defendant demanding payment for the performed treatment in the total amount of $10,250.00. (*See*, **Exhibit M**, attached hereto.)

35. On or around March 25, 2019, Defendant issued payment for Plaintiff's services in the total amount of $7,880.00. (*See*, **Exhibit N**, attached hereto.)

36. Defendant's explanation of benefits indicates that the remaining $2,370.00 in Plaintiff's charges are neither Defendant's nor Patient 3's responsibility even though Plaintiff never agreed to any such arrangement. *Id*.

37. Plaintiff submitted multiple internal appeals to Defendant challenging Defendant's reimbursement as an underpayment pursuant to the terms of Patient 3's insurance plan.

38. However, Defendant failed to issue any additional reimbursement in response to Plaintiff's appeals.

39. Upon information and belief, Defendant's reimbursement for Plaintiff's treatment of Patient 1, Patient 2, and Patient 3 were inconsistent with the terms of those patient's respective insurance plans.

40. Upon information and belief, the combined amount Defendant should have paid Plaintiff for Plaintiff's treatment of Patient 1, Patient 2, and Patient 3 under their respective insurance plans was $119,250.00.

41. The total combined amount Defendant paid Plaintiff for Plaintiff's treatment of Patient 1, Patient 2 and Patient 3 was $75,051.50.

42. Plaintiff has thus been damaged in the amount of $44,198.50 ($119,250.00 - $75,051.50 = $44,198.50).

43. Accordingly, Plaintiff brings this action for recovery of the outstanding balance, and Defendant's breach of fiduciary duty.

## COUNT ONE

### FAILURE TO MAKE PAYMENTS PURSUANT TO MEMBER'S PLAN UNDER 29 U.S.C. § 1132(a)(1)(B)

44. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 43 of the Complaint as though fully set forth herein.

45. Plaintiff avers this Count to the extent ERISA governs this dispute.

46. Section 502(a)(1), codified at 29 U.S.C. § 1132(a) provides a cause of action for a beneficiary or participant seeking payment under a benefits plan.

47. Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Patient 1, Patient 2, and Patient 3.

48. Upon information and belief, Defendant acted in a fiduciary capacity in administering any claims determined to be governed by ERISA.

49. Plaintiff is entitled to recover benefits due to Patient under any applicable ERISA plan or policy.

50. As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

**COUNT TWO**

**BREACH OF FIDUCIARY DUTY AND CO-FIDUCIARY DUTY UNDER 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a)**

51. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 50 of the Complaint as though fully set forth herein.

52. 29 U.S.C. § 1132(a)(3)(B) provides a cause of action by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

53. Plaintiff seeks redress for Defendant's breach of fiduciary duty and/or Defendant's breach of co-fiduciary duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a).

54. 29 U.S.C. § 1104(a)(1) imposes a "prudent man standard of care" on fiduciaries.

55. Specifically, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under

7

the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. 29 U.S.C. § 1104(a)(1).

56. 29 U.S.C. § 1105(a) imposes liability for breaches of co-fiduciaries.

57. Specifically, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) ["prudent man standard of care] of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

58. Here, when Defendant acted to partially deny payment for the medical bill at issue, and when they responded to the administrative appeals initiated by Plaintiff, they were clearly acting as a "fiduciary" as that term is defined by ERISA § 1002(21)(A) because, among other reasons, Defendant acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue as described above.

59. Here, Defendant breached its fiduciary duties by: (1) failing to issue an Adverse Benefit Determination in accordance with the requirements of ERISA and applicable regulations; (2) participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (3) failing to make reasonable efforts

under the circumstances to remedy the breach of such other fiduciary; and (4) wrongfully withholding money belonging to Plaintiff.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. For an Order directing Defendant to pay Plaintiff $44,198.50;
B. For an Order directing Defendant to pay Plaintiff all benefits Patient 1, Patient 2, and Patient 3 would be entitled to under the applicable insurance plan or policy administered by Defendant;
C. For compensatory damages and interest;
D. For attorney's fees and costs of suit; and
E. For such other and further relief as the Court may deem just and equitable.

Dated: New York, NY
February 26, 2020

                SCHWARTZ SLADKUS
                REICH GREENBERG ATLAS LLP
                *Attorneys for Plaintiff*

        By:   /s/ Michael Gottlieb
               Michael Gottlieb
               444 Madison Avenue
               New York, NY 10022
               (212) 743-7054